UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA KOPPENAAL,
surviving spouse of DENNIS
KOPPENAAL, deceased,

      Plaintiff,

v.	Case No. 1:12-cv-490
    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**OPINION**

      Dennis Koppenaal ("claimant") applied for disability insurance benefits (DIB) on October 29, 2007 (AR 171). After his claim was denied, Mr. Koppenaal appealed to an administrative law judge (ALJ), who denied the appeal in a decision entered on August 31, 2010 (AR 20). Claimant died on September 9, 2011 at age 57, while this matter was pending before the Appeals Council. Plaintiff's Brief at p. 2. On September 19, 2011, his widow, Barbara Koppenaal, filed a "Notice regarding substitution of party upon death of claimant," and was substituted into the administrative action in place of her deceased husband (AR 7-8). After the Appeals Council denied the request to review the ALJ's decision denying benefits, Barbara Koppenaal ("plaintiff") filed the present action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Dennis Koppenaal's claim for disability insurance benefits (DIB).

Claimant was born on February 6, 1953 (AR 171).[1] He alleged a disability onset date of October 17, 2006 (AR 171). Claimant completed high school and received special job training in electronics (AR 180). He had previous employment as a general industrial laborer, a foreman and a house painter (AR 176). Claimant identified his disabling conditions as sclerosis of the liver and other liver problems (AR 175). The ALJ reviewed claimant's claim *de novo* and entered a written decision denying benefits on August 31, 2010 (AR 13-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

---

[1] Citations to the administrative record will be referenced as (AR "page #").

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

3

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Dennis Koppenaal's claim failed at the fifth step of the evaluation. The ALJ initially found that claimant had not engaged in substantial gainful activity since the alleged onset date of October 17, 2006 through his date last insured of December 31, 2006 (AR 15). Second, the ALJ found that claimant had the severe impairments of cirrhosis and alcohol abuse (AR 15). At the third step, the ALJ found that claimant did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). Specifically, plaintiff did not meet the requirements of Listings 5.05 (chronic liver disease) or 12.09 (substance addiction disorders) (AR 16).

The ALJ decided at the fourth step as follows:

> After careful consideration of the entire record, I find that through the date last insured, claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) of the Regulations. He was able to lift/carry up to 20 pounds occasionally, 10 pounds frequently; stand/walk for about 6 hours and sit for about 6 hours during an 8-hour workday, with normal breaks; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

(AR 16). The ALJ also found that claimant was unable to perform any of his past relevant work (AR 18).

At the fifth step, the ALJ determined that claimant could perform a significant number of unskilled, light jobs in the regional economy (defined as the State of Michigan) (AR 19). Specifically, plaintiff could perform the following jobs in the regional economy: assembler (14,000

4

jobs); machine tender (8,00 jobs); and counter clerk (14,900 jobs) (AR 19). Accordingly, the ALJ determined that claimant has not been under a disability, as defined in the Social Security Act, from October 17, 2006 (the alleged onset date) through December 31, 2006 (the date last insured) (AR 20).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The decision violates the treating source rule and lacks good reasons to reject the opinions of the treating source.**

#### A. Dr. Bouwens' opinions

Plaintiff contends that the ALJ failed to properly weigh the opinion of claimant's treating physician, Eric Bouwens, M.D. The relevant time frame for the claim at issue is relatively short, extending for about 2 1/2 months from claimant's alleged onset date of October 17, 2006 through his last insured date of December 31, 2006. Dr. Bouwens gave a statement on April 16, 2010, more than three years after claimant's last insured date (AR 461). At that time, Dr. Bouwens stated that claimant had been his patient from 2000 and last saw him on February 9, 2010 (AR 461). The doctor had been treating claimant for "chronic alcoholism with cirrhosis and esophageal varices" (AR 461). When the doctor last saw claimant, he had very advanced liver disease from his alcohol abuse and was "barely able to carry on daily activities" (AR 461). The doctor explained the extent of claimant's liver disease and why it made it so difficult for claimant to function:

> Because the liver is where all of the energy is processed in the body and when your liver is destroyed, which his is pretty much destroyed, you really don't have the ability to generate energy.

(AR 462). The doctor explained that if claimant ceased his alcohol consumption, he might experience a very slight improvement, but that "[t]he liver cannot really repair itself" (AR 462-63).

Dr. Bouwens stated that as of April 2010 claimant could not function in a work setting, eight hours a day, five days a week, even at a full-time "sit-down job" (AR 463). When asked if claimant's condition would have been similar as of his last insured date, December 31, 2006, the doctor responded:

> Yes. Dennis had already experienced hepatic encephalopathy and then with elevated levels of ammonia in his blood, and that indicates a very advanced level of irreversible liver disease.

(AR 463).

At this point, counsel asked if claimant was hospitalized in June 2006 with encephalopathy, to which the doctor responded "yes" (AR 463). As plaintiff points out in her brief, this exchange between the doctor and counsel was inaccurate on two counts. First, claimant was hospitalized in October 2006 rather than June 2006 (AR 275-77). Second, the hospitalization for encephalopathy was in October 2007, not October 2006 (AR 267-68).

The doctor stated that claimant's ammonia level in June 2006 was elevated and "would be proof that . . . [his] mental changes that I was observing at that moment were in fact due to hepatic encephalopathy" (AR 463-64). The doctor explained that with such a toxic level of ammonia in the blood stream, a person becomes confused and are not able to think clearly (AR 463). The doctor stated that his notes from October 11, 2006 reflected that claimant was reporting significant fatigue and extreme weakness (AR 465). Dr. Bouwens stated that a note from November 16, 2006 suggests that plaintiff was gaining in strength and "that he has been able to return to work," but qualified that remark stating:

> I don't know if that's true that he actually returned. I would say it wouldn't be too unusual for a person to have day-to-day fluctuations in how they feel and could imagine that they could return. But I'd be very surprised if he had been able to return to work.

(AR 465-66).

Dr. Bouwens noted that he did not see claimant from November 2006 through October 2007, during which time claimant was only taking medication (AR 466). The doctor stated that during that time frame, he did not believe that claimant was able to work (AR 466). When asked to explain, Dr. Bouwens stated:

> My opinion is based on the fact that he had advanced irreversible liver disease and I would not expect any significant [sic], any reason to think he could improve enough to have the energy to support working. He was frequently barely able to get to the bathroom. So that's sort of a baseline. He might improve slightly from that but to go from there to having the energy to do eight hours of work a day, that would be a big stretch.

(AR 467).

### B. The ALJ's decision

The ALJ summarized claimant's hearing testimony as follows:

> Claimant testified that it has been several weeks prior to the hearing since he last consumed alcohol. Claimant said that he has stopped and re-started drinking several times. Claimant further testified that, from October 2006 through December 2006, he thought he was getter better at times but, at other times, he could not get out of bed. He stated that, while in November 2006, he told his doctor he thought he might be able to return to work, he never actually did return to work.

(AR 17).

The ALJ also summarized the medical record from October and November 2006 as follows:

> On October 11, 2006, claimant stated that, after being a heavy drinker for many years, he stopped drinking three weeks ago and was taking the medication Lorazepam to treat alcohol withdrawal. Physical exam showed a very enlarged liver measuring 20 centimeters with a smooth margin. The abdomen appeared to have a positive fluid bag, which was consistent with ascites, and was tender throughout. Claimant was sent directly to the emergency department for further evaluation and treatment (Exhibit 3F/7).

> An October 2006 magnetic resonance image (MRI) demonstrated a fatty, enlarged liver with slight spenomegaly (Exhibits 3F/15-16 and 5F/24-38).
>
> On November 15, 2006, claimant was treated in follow-up care for alcoholic hepatitis and liver failure. He did think he was gaining strength and that he had been able to return to work. He was committed to sobriety and had not started to drink again. Claimant weighed 168 pounds. The abdomen was less protuberant than in the past. There was still significant hepatomegaly with a firm liver edge. Claimant continued taking the medication Requip and he was urged to continue to advance his activities (Exhibit 3F/5).

(AR 16).

> The ALJ then reviewed the opinion evidence, including Dr. Bouwens' opinion:
>
> As for the opinion evidence, I considered the State Agency's initial determinations, but also considered the entire record *de novo*. Here, I find that the non-treating, non-examining physician's assessment in exhibit 10F is generally well supported for the period of October 17, 2006 through December 31, 2006.
>
> I considered the June 2010 deposition statement of Eric Bouwens, MD, in exhibit 17F. Counsel concedes that the deposition statements referred to a 2006 hospitalization actually occurred in 2007 (Exhibit 14E). Dr. Bouwens notes that, at that time, claimant continued to struggle with alcohol addiction and had been prescribed Librium and Ativan to treat alcohol withdrawal symptoms (Exhibit 17F).
>
> In any event, the record as a whole is not persuasive of a disability that began on or before December 31, 2006. The evaluation of disability is not primarily a diagnosis-driven analysis; the diagnosis of impairments through December 31, 2006 is not sufficient to establish disability.

(AR 18).

### C. Discussion

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical

8

professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2). An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ failed to articulate good reasons for not crediting Dr. Bouwens' opinion regarding claimant's condition during the relevant time period (October 17, 2006 through December 31, 2006) and also failed to discuss the weight to give to the doctor's opinion. The ALJ's brief review of Dr. Bouwens' opinion did not address the doctor's opinions regarding claimant's medical condition or his ability to perform work-related activities. While the ALJ pointed out the error in Dr. Bouwens' testimony regarding the hospitalization for encephalopathy in October 2007, the record reflects that claimant was hospitalized in October 11, 2006, when he appeared at the doctor's office complaining of extreme weakness, poor energy, not sleeping and tremor (AR 298). Dr. Bouwens sent claimant directly to the hospital emergency room for evaluation and treatment (AR 298). Hospital records reflect that claimant was admitted on October 11, 2006 and discharged on October 17, 2006 (his alleged disability onset date) (AR 275). Given this record, the ALJ's review did not constitute "good reasons" for not crediting Dr. Bouwens' opinions. *See Wilson*, 378 F.3d at 545.

In addition, the ALJ's failed to determine the weight given to Dr. Bouwens' opinions under the regulations, which require that the agency to determine the weight of opinion evidence provided by treating physicians:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2).

Based on this record the ALJ failed to articulate his reasons for not crediting the opinion of Dr. Bouwens and failed to properly weigh those opinions. For these reasons, the ALJ's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Bouwens' opinions consistent with the regulations and this Court's opinion.

## IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Bouwens' opinions consistent with the regulations and this Court's opinion. A judgment consistent with this opinion shall be issued forthwith.


Dated: September 25, 2013          /s/ Hugh W. Brenneman, Jr.
                                   HUGH W. BRENNEMAN, JR.
                                   United States Magistrate Judge